

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
Signed May 6, 2010 United States Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § § | Case No. 06-43165-DML-11 |
| **Lori Lyn Ranzino-Renda,** | § § | |
| Debtor. | § § | |

| | | |
|---|---|---|
| **Lori Lyn Ranzino-Renda,** | § § | |
| Plaintiff, | § § § | |
| vs. | § § | Adversary No. 08-04020 |
| **Sullivan & Cook, LLC f/k/a Sullivan, Parker and Cook, L.L.C., Jeffrey E. Cook Individually,** | § § § § | |
| Defendants. | § | |

**Findings of Fact and Conclusions of Law**

The court exercises jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(c). The court may enter judgment in this adversary proceeding pursuant to section 157(c)(2) because Defendants have explicitly consented to such and Plaintiff has denominated this adversary proceeding as a core proceeding, thus implicitly and constructively

Page 1

consenting to entry of judgment by the bankruptcy court.  Furthermore, no party made a timely objection to any matter as provided by section 157(c)(1).

The following are the court's findings of fact and conclusions of law.  To the extent that a finding of fact in whole or in part constitutes a conclusion of law it should be considered as such.  To the extent that a conclusion of law in whole or in part constitutes a finding of fact it should be considered as such.

A.    <u>Findings of Fact</u>

1.    In February 2003, Plaintiff Lori Lyn Ranzino-Renda ("Ranzino-Renda") contacted Teresa Campbell ("Campbell") to obtain legal advice and representation in connection with a divorce from Ranzino-Renda's husband, Rudolph Renda.

2.    On February 10, 2003, Ranzino-Renda signed a written agreement by which she engaged Campbell to represent her in a divorce case against Mr. Renda and agreed to pay $185 per hour for time expended by Campbell in doing so.

3.    A petition for divorce was filed in the 325th District Court, Tarrant County, Texas, and docketed as *In re the Marriage of Lori Renda and Rudolph Renda*, Cause Number 325-346230-03 (the "Divorce Case"). The petition was served on Mr. Renda on February 14, 2003.

4.    Shortly after service of the petition in the Divorce Case on Mr. Renda, Campbell proposed to Ranzino-Renda that she engage additional counsel to represent her in the her Divorce Case, and Campbell introduced Ranzino-Renda to Jeffrey E. Cook ("Cook").

5.    Cook was then, and has continuously been since then, a member of the law firm of Sullivan, Parker & Cook LLC, *n/k/a* Sullivan & Cook, L.L.C. ("SPC").

6. Ranzino-Renda agreed to have Cook represent her in her Divorce Case together with Campbell.

7. On April 8, 2003, Position by Design, Inc., ("PBD") commenced a civil action against Ranzino-Renda by filing "Plaintiff's Original Petition and Application for Injunctive Relief").  The case was docketed as cause Number 017-198285-03 (the "PBD Case") in the 17th District Court, Tarrant County, Texas (the "17th District Court").

8. Elizabeth Falconer was the president of PBD and was married to a business associate of Mr. Renda.

9. Based on his discussions with Ranzino-Renda, Cook believed it possible that Mr. Renda had orchestrated the filing of the PBD Case to put pressure on Ranzino-Renda in the Divorce Case.

10. Ranzino-Renda agreed to have Cook and SPC represent her in the PBD Case.

11. On May 12, 2003, SPC filed on Ranzino-Renda's behalf a general denial in the PBD Case styled "Defendant's Original Answer".

12. On June 10, 2003, SPC filed in the PBD Case on Ranzino-Renda's behalf "Defendant's Third-Party Petition," asserting third-party claims against Elizabeth Falconer and an entity known as Headin' West, Inc.

13. When Cook began representing Ranzino-Renda, she lived at 7003 Lismore Court, Colleyville, Texas 76034 (the "Colleyville Address").

14. At various times in 2003, Ranzino-Renda received mail from Cook at the Colleyville Address.

15. After the first invoice, invoices sent by SPC to Ranzino-Renda reflected that SPC was billing at a rate of $300 per hour for Cook's time.

16. Campbell had received funds from Mr. Renda pursuant to an agreement or order in the Divorce Case against which were charged the bills of SPC for work done in the Divorce Case and the PBD Case. Except for such funds that were received from Campbell, SPC received no payments for services to Ranzino-Renda.

17. There is no evidence that Renzino-Renda received less in the eventual settlement of the Divorce Case than she otherwise would have by reason of payment to SPC for services rendered in the PBD Case from funds advanced by Mr. Renda in connection with the Divorce Case.

18. In October 2003, Ranzino-Renda decided to change counsel in the Divorce Case, and Ike Vanden Eykel and Charles Hodges of the law firm Koons, Fuller, Vanden Eykel & Robertson substituted for Campbell and Cook as attorneys for Ranzino-Renda in the Divorce Case.

19. When Ranzino-Renda decided to engage new attorneys to represent her in the Divorce Case, she chose not to engage new attorneys to represent her in the PBD Case, so Cook and SPC continued to represent her in that case.

20. In December 2003, Ranzino-Renda moved to 8600 Thackery Street, Unit 91, Dallas, Texas 75225 (the "Thackery Address"). At or about that time she also leased a post office box at Mail Copy Plus. Her post office box address was 4709 Colleyville Boulevard, Box # 580-400, Colleyville, Texas 76034. Ranzino-Renda did not request Cook or SPC to communicate with her at the post office box address or notify either of them of that address.

21. In March 2004, Ranzino-Renda spoke via telephone with an employee of SPC, and asked for a copy of all invoices which had been sent by SPC to Ranzino-Renda.

22. On March 18, 2004, SPC sent to Ranzino-Renda a copy of all invoices generated by SPC to date, with a cover letter bearing that date. The letter and invoices were sent to the Thackery Address. Ranzino-Renda received the letter and invoices.

23. Ranzino-Renda was aware of the manner and amounts of SPC's billing, and the dates and amounts of the payments received from Campbell and applied by SPC, no later than March 2004, when Ranzino-Renda received the March 18 letter and enclosures (copies of all invoices to that date) from SPC.

24. On October 20, 2004, and November 9, 2004, Cook sent letters to Ranzino-Renda addressed to her at the Thackery Address. Each letter was sent by first class U.S. Mail and by certified U.S. Mail, return receipt requested.

25. On October 20, 2004, Cook sent to Ranzino-Renda, by first-class U.S. Mail and by certified U.S. Mail, return receipt requested, addressed to her at the Thackery Address, a letter advising her that the 17th District Court had issued an order directing the parties in the PBD Case to participate in a mediation no later than December 5, 2004.

26. Shortly before October 20, 2004, Ranzino-Renda called Cook but did not leave her phone number.

27. In the letter to Ranzino-Renda dated October 20, 2004, Cook wrote: "You called me the other day, but I do not have a good telephone number for you. Please call me."

28. The letter dated October 20, 2004, which was sent to Ranzino-Renda at the Thackery Address by first-class U.S. Mail, was not returned to SPC by the U.S. Postal Service.

29. A copy of the letter dated October 20, 2004, which was sent to Ranzino-Renda at the Thackery Address by certified U.S. Mail, return receipt requested, was returned to SPC by

the U.S. Postal Service with the notation that notice of the letter was given on three dates and that the letter was "UNCLAIMED."

30. Ranzino-Renda never responded to Cook's letter of October 20, 2004.

31. On November 9, 2004, Cook sent to Ranzino-Renda at the Thackery Address, by first class U.S. Mail and by certified U.S. Mail, return receipt requested, another letter, this one forwarding a proposed "Agreed Order Scheduling Mediation" and a letter from opposing counsel in the PBD Case.

32. On the letter of November 9, 2004, Cook wrote by hand the following note: "Lori, you will need to hire a new lawyer if you do not want to continue with me. The case is heating up. Jeff."

33. The letter dated November 9, 2004, which was sent by first class U.S. Mail, was not returned to SPC by the U.S. Postal Service.

34. The other copy of the letter dated November 9, 2004 which was sent by certified U.S. Mail, return receipt requested, was returned to SPC by the U.S. Postal Service with the notations "RETURN TO SENDER," "UNCLAIMED," and "UNABLE TO FORWARD." The envelope also reflects at least two notices.

35. Ranzino-Renda never responded to Cook's letter of November 9, 2004.

36. Ranzino-Renda continued to lease the premises at the Thackery Address until December 2, 2004. She began moving out from the Thackery Address prior to December 2, 2004, but completed moving on December 2, 2004.

37. Ranzino-Renda had a mailbox at the Thackery Address and checked it regularly until she moved out on December 2, 2004.

38. At approximately the time that Ranzino-Renda moved from the Thackery Address she gave the United States Postal Service her forwarding address.

39. As of December 2, 2004, Ranzino-Renda completed a move to 4624 Firestone Drive, Frisco, Texas 75034, but did not inform Cook or SPC of her new address.

40. Ranzino-Renda listed her cell phone number as 214-532-4648, on the SPC client intake form (Plaintiff's Exhibit 123). She used this number from the time she hired SPC until some time later in 2003.

41. At some point in 2003, Ranzino-Renda ceased using the cell phone with the number 214-532-4648 and began using a cell phone with the number 214-532-0899.[1] She did not give Cook or anyone else at SPC the latter cell phone number.

---

[1] On February 17, Ranzino-Renda initially testified as follows:

THE WITNESS:… the only time Jeff Cook called me was when he was preparing me for my deposition, and I remember that distinctly because I went to the 100th Anniversary of Harley Davidson with friends, and --
THE COURT: When was that that he was --
THE WITNESS: That was during, I believe, August of 2003, when we were getting ready to do the depositions. And I spoke with him for a lengthy period of time because I was driving back from Milwaukee, and we were probably on the phone, it seemed like an hour and a half. It could have been an hour, but I know it was a long time.
THE COURT: Did he call you on the cell phone?
THE WITNESS: Yes, he called me on my cell phone.
THE COURT: Was that the cell phone that you had after the -- did you still have that cell phone as of the time he withdrew from your case?
THE WITNESS: Yes, sir.

Later, following testimony by Cook, when recalled by the court, Renzino-Renda testified as follows:

THE COURT: Okay. The Sullivan, Parker & Cook sheet that you have included in your exhibits as Exhibit 123 shows your cell phone as 214-532-4648. Right?
THE WITNESS: Yes. That's the intake sheet, --
THE COURT: Yes.
THE WITNESS: -- the client intake sheet?
THE COURT: Yes.
THE WITNESS: Yes.

42. On February 17, 2005, SPC filed a Motion to Withdraw as Attorney of Record for Lori Ranzino-Renda (the "Motion to Withdraw").

43. Before filing the Motion to Withdraw, SPC sent a copy of it to Ranzino-Renda at the Thackery Address with a transmittal letter dated February 15, 2005 by first-class U.S. mail and certified mail, return receipt requested.

44. On February 29, 2005, SPC sent another letter to Ranzino-Renda at the Thackery Address by first-class U.S. mail and certified mail, return receipt requested, notifying her the Motion to Withdraw would be presented to the Court on March 11, 2005.

45. Neither the February 15 nor the February 29 letter sent by first-class mail was returned to SPC. Each of the letters sent by certified mail was returned unclaimed.

46. Cook believed, reasonably, that Ranzino-Renda had received all first class mail sent by SPC to her at the Thackery Address. Cook therefore believed, reasonably, that Ranzino-Renda was fully aware of the progress of the PBD Case.

47. In the Motion to Withdraw SPC truthfully represented to the 17th District Court that the firm had attempted to reach Ranzino-Renda at the last address the firm had for her (the Thackery Address) and at the last phone number the firm had for her (214-532-4648).

---

THE COURT: And the cell phone from which you made the calls to Mr. Cook's office is reflected as 214-532-0899?
THE WITNESS: That's correct.
THE COURT: All right. What can you tell me about the discrepancy between the two numbers?
THE WITNESS: The 4648 number was a phone that I used to have. And then I had 54 -- excuse me, 532-0899 replace that number, and I got rid of that number, I believe in' 08. And I still have 543-4940, is still a current phone number.
THE COURT: Okay. When did you stop using 532-4648?
THE WITNESS: I believe it was sometime in '03.

The court finds this testimony inconsistent, but recognizes that Ranzino-Renda may have been referring to the same physical cell phone, as opposed to the number, in her initial testimony.

48. On March 11, 2005, the Motion to Withdraw was presented to the 17th District Court and was granted by order entered during the hearing.

49. The order on Motion to Withdraw as Attorney of Record states: "There are not pending settings or deadlines in this case."

50. Later that day, the 17th District Court set trial of the PBD Case for April 25, 2005. Neither SPC nor Cook was informed of the trial setting.

51. On April 25, 2005, the 17th District Court called the PBD Case for trial and, after Ranzino-Renda failed to appear, entered judgment for PBD against Ranzino-Renda for $624,000.

52. Ranzino-Renda's failure to protect herself in the PBD Case after entry by the 17th District Court of the order granting the Motion to Withdraw was not foreseeable by SPC or Cook.

53. On September 21, 2006, Ranzino-Renda filed in this court a petition under Chapter 11 of the United States Bankruptcy Code, and her case was docketed as 06-43165-DML-11 (the "Bankruptcy Case").

54. In the Bankruptcy Case, Ranzino-Renda claimed that her monthly payments from Mr. Renda were legally exempt from collection by creditors.

55. On December 7, 2006, PBD filed an objection to Ranzino-Renda's claimed exemption of the monthly payments.

56. By order dated August 6, 2007, the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Bankruptcy Court"), per Hon. Russell F. Nelms, J, overruled the objections of PBD to Ranzino-Renda's claim that her monthly payments were legally exempt from collection by creditors.

57. Thereafter, Ranzino-Renda entered into a settlement agreement with PBD under which Ranzino-Renda was released from liability under the default judgment entered in the PBD Case on April 25, 2005, and all pending claims between Ranzino-Renda and PBD were released.

58. The settlement agreement between Ranzino-Renda and PBD was approved by the Bankruptcy Court by order dated October 4, 2007.

59. There is no credible evidence before this court that any material misrepresentation respecting any legal matter, the relationship between Ranzino-Renda and SPC or any pertinent fact was made to Ranzino-Renda by Cook or any member or employee of SPC.

B.  Conclusions of Law

1. The engagement agreement between Plaintiff and Campbell and her law firm did not govern the professional relationship between Plaintiff and SPC, and SPC was not obligated to charge Plaintiff for time expended by Cook at the same rate as (or a lower rate than) Campbell was charging Ranzino-Renda.

2. SPC and Cook were entitled to payment for their services and breached no duty to Ranzino-Renda in the manner in which they received and applied funds paid on her behalf. To the extent SPC or Cook applied funds advanced in connection with the Divorce Case by Mr. Renda to pay amounts due to SPC for work in the PBD Case, any claim that the funds were misapplied does not belong to Ranzino-Renda.

3. SPC had no obligation as a matter of law or by reason of agreement between Renzino-Renda and SPC to provide separate billings for the Divorce Case and the PBD Case.

4. Ranzino-Renda may not collaterally attack the order authorizing SPC to withdraw from its representation of her because the withdrawal was authorized by order entered by the

17th District Court on March 11, 2005 and the order was within that court's jurisdiction and not fraudulently obtained.[2]

6. Because SPC was authorized by order to withdraw in the PBD Case, to the extent Ranzino-Renda suffered damages by reason of not being represented in the PBD Case, the actions of SPC and Cook neither caused nor contributed to such damages.

6. Plaintiff suffered no damages by reason of any conduct of SPC or Cook other than their filing of the Motion to Withdraw, and, as concluded and found herein, SPC's withdraw from the PBD Case was properly authorized by order of the 17th District Court.

Based on the foregoing, the court concludes that Cook and SPC have no liability to Ranzino-Renda. Accordingly, counsel for SPC and Cook is instructed to prepare and submit a take-nothing judgment in the captioned adversary proceeding. Each party shall bear its own costs.

# # # # END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW # # # #

---

[2] The court concludes that, as the order authorizing withdrawal was obtained based upon truthful representations in the Motion to Withdraw respecting efforts of SPC to contact Ranzino-Renda, such order is not subject to review by or attack in this court. *See, e.g., Thomas v. Sklodowski*, 709 N.E.2d 656, 659-60 (Ill. App. Ct. 1999)**.**